# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES and TARA WINTERS, individually and on behalf of those similarly situated; JAYSON F. KHOON, individually and on behalf of those similarly situated; and DENNIS and CARMEN FABBRI, individually and on behalf of those similarly situated, | Case No. <br><br>**CLASS ACTION COMPLAINT** <br><br>**PLAINTIFFS DEMAND TRIAL BY JURY** |
| Plaintiffs, | |
| vs. | |
| UPONOR, INC., an Illinois corporation; WIRSBO COMPANY, an Illinois company; UPONOR WIRSBO COMPANY, an Illinois company; UPONOR CORPORATION, a Finnish corporation; DOES 1 through 100, inclusive, and ROES 1 through 100, inclusive, | |
| Defendants. | |

Plaintiffs JAMES and TARA WINTERS, JAYSON F. KHOON and DENNIS and CARMEN FABBRI ("Plaintiffs") individually and on behalf of those similarly situated in the United States, through their undersigned counsel, brings this class action against UPONOR CORPORATION, a Finnish corporation; UPONOR, INC., an Illinois corporation; WIRSBO COMPANY, an Illinois company; UPONOR WIRSBO COMPANY, an Illinois company (collectively "Defendants" or "Uponor entities").  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.

## THE NATURE OF THIS ACTION

1.     Plaintiffs, individually and on behalf of those similarly situated in the United States, brings this class action on behalf of all owners of homes and buildings with plumbing systems utilizing Defendants' brass ASTM F877 and/or F2080 fittings (collectively "Fittings"), as well as any person or entity who has paid for repairs or damage caused by the failure of the Fittings which are defective.

1

2.     Plaintiffs have been damaged as a result of the design, development, advertisement, marketing and sale of the Fittings.

3.     Defendants have sold their Fittings for PEX plumbing systems throughout the United States.

4.     Defendants have warranted and advertised that their PEX plumbing systems with brass Fittings had a lengthy warranty that expressly covered consequential damages arising from leaks or failures in the plumbing systems.

5.     Defendants have warranted and advertised their brass Fittings as "proven," "carefully engineered," "reliable," and resistant to corrosion.

6.     These representations however proved untrue when Defendants' brass Fittings began to prematurely fail across the country.  These failures have resulted or will result in substantial damage to property other than the plumbing systems themselves prior to the Fittings reaching their useful life and the leaching of impermissible amounts of lead into the potable-water-delivery systems.

7.     Plaintiffs and the classes they seek to represent have suffered damage as a result of owning homes and buildings with defective Fittings.

8.     The failures of the Fittings have and will in the future cause water leaks.  These leaks have and will in turn cause extensive damage to other property including the homes and buildings and personal property of the owners and the leaching of impermissible amounts of lead into the potable-water-delivery systems.

9.     Plaintiffs, individually and on behalf of all those similarly situated, seek damages arising from and proximately caused by Defendants' wrongful conduct, as well as declaratory and injunctive relief, as set forth below.

10.    The manufacturers of the brass Fittings specified or accepted the use of a high-zinc-content brass that is commonly referred to as "yellow brass" and held them out as suitable for use in the United States for potable water delivery systems.  High-zinc-content brass, however, has long been known to suffer from de-alloying corrosion attack known as dezincification, which is an injury that happens to all high-zinc-content brass plumbing components when they are exposed to water.

2

Plaintiffs bring this action to seek relief from this defective product and to redress the injuries that it has caused to them and similarly situated owners of homes and buildings constructed in the United States.

11.     Plaintiffs intend to seek, pursuant to FRCP 23(b)(3), certification of a class for damages and other relief, including but not limited to relief under Nevada Revised Statute ("NRS") Chapter 40 on behalf of the owners of all homes and buildings constructed in the United States that contain or contained Defendants' F877 and F2080 Fittings.

## II.

## PARTIES

12.     Plaintiffs bring this action to toll all applicable statutes of limitations and/or statutes of repose and reserved all rights on behalf of themselves and all similarly situated plaintiffs/owners/class members to pursue pre-filing remedies and/or requirements.

13.     Plaintiffs JAMES and TARA WINTERS, JAYSON F. KHOON and DENNIS and CARMEN FABBRI, are citizens of State of Nevada and owners of residential property in Las Vegas and North Las Vegas, Nevada.  Plaintiffs' homes and buildings have plumbing systems utilizing Defendants' F877 and/or F2080 Fittings.

14.     Plaintiffs have standing, pursuant to FRCP 23(a), to bring all of the claims set forth in this Complaint as representatives of the proposed class of owners of homes and buildings with Defendants' F877 and/or F2080 Fittings.

15.     All of the owners of homes and buildings in the United States that contain or contained Defendants' F877 and/or F2080 Fittings have been injured as a result of the presence of these defective products.  Blatant manifestations of this defect have caused additional damages including, but not limited to loss of structural integrity and/or strength of the brass Fittings, weeping, leaks, blockages, restriction and/or reduction of water flow and/or pressure, loss of use and function of the plumbing system and related improvements and/or appliances, including the leaching of lead into the potable-water-delivery systems, resultant damage to the homes and buildings and the work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.  The damages are expected to increase over time as the defective

F877 and/or F2080 Fittings continue to corrode. The homes and buildings with the F877 and/or F2080 Fittings must be replumbed in order to ensure that use of this defective product has been completely abandoned in those homes and buildings. Plaintiffs estimate that it will cost approximately $10,000 per residence.

16. Plaintiffs are informed, believe, and thereupon allege that the Defendants, proximately caused the injuries and damages herein alleged:

a. Defendant UPONOR CORPORATION is a Finnish corporation that is responsible for the design, manufacture, and/or distribution of the defective F877 and/or F2080 Fittings, both directly and indirectly, by and through its agents and collective business enterprise partners, including, but not limited to UPONOR, INC.

b. Defendant UPONOR, INC. is an Illinois corporation that is responsible for the design, manufacture, and/or distribution of the defective F877 and/or F2080 Fittings. UPONOR, INC. is the agent of its parent, UPONOR CORPORATION, with whom it acted as a single, collective and common business enterprise.

c. Defendant UPONOR WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective F877 and/or F2080 Fittings, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

d. Defendant WIRSBO COMPANY is an Illinois company that is responsible for the design, manufacture, and/or distribution of the defective F877 and/or F2080 Fittings, both directly and indirectly, by and through its alter-egos, members, agents, predecessors-in-interest and/or other representatives.

i. Defendants form a worldwide group or conglomerate of interrelated companies, with UPONOR CORPORATION at the apex, that are commonly engaged in the line of business that is designing, developing, testing, manufacturing, distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for the construction and public utility industries.

ii. UPONOR CORPORATION's subsidiaries, UPONOR, INC.; WIRSBO

4

COMPANY; and UPONOR WIRSBO COMPANY, perform functions that are compatible with and assist UPONOR CORPORATION in the pursuit of its own business.

iii.    But for the existence of its subsidiaries, UPONOR CORPORATION would have to undertake to perform substantially similar services as those undertaken by its subsidiaries.  UPONOR CORPORATION exerts control over its subsidiaries that is so pervasive and continual that they may be considered the agents, members, alter egos, or instruments of one another and especially their apex company, UPONOR CORPORATION, regardless of the maintenance of corporate formalities.

17.    Plaintiffs allege and assert that they have had to retain legal counsel from the firms of Canepa, Riedy & Rubino; Maddox, Isaacson & Cisneros; Kemp Jones & Coulthard, LLP; Lynch Hopper, Salzano & Smith, LLP; Carraway & Associates, LLC; and Goldenberg Heller Antognoli & Rowland, P.C. to represent them in the underlying claim of defective construction and in this legal action, and are therefore entitled by NRS Chapter 40, other statutes, and common law to recover damages and entitlements therein, their reasonable attorneys' fees, expert fees, costs, expenses, and interest upon the same as part of any judgment entered herein.

**III.**

**JURISDICTION AND VENUE**

18.    This Court has jurisdiction over Defendants because the North American Defendants[1] are incorporated in the State of Illinois and are citizens of the State of Illinois.

19.    This Court has subject matter jurisdiction over this action because there are more than one hundred (100) Class members who are citizens of and residing in multiple states and the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

20.    Venue is proper in this District because the North American Defendants are incorporated in the State of Illinois and a substantial part of the events and omissions giving rise to the action occurred in Southern District of Illinois.

---

[1] The North American Defendants include: UPONOR, INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY.

21.     This Court has jurisdiction over Defendant, UPONOR CORPORATION, because it is the alter ego of their subsidiaries and/or their subsidiaries are their members, agents, and/or predecessors-in-interest.  The Defendants are a single, collective, and common business enterprise for UPONOR CORPORATION'S own business.  There is such a unity of ownership and interest between Defendant UPONOR CORPORATION and its subsidiaries that the ownership and interest of one is inseparable from the other.  Adherence to the corporate fiction would sanction fraud and promote injustice.  Defendant UPONOR CORPORATION exerts control over its subsidiaries that is so pervasive and continual that the subsidiaries may be considered its agents, members, or instruments. But for this important relationship, Defendant UPONOR CORPORATION would have to undertake to perform substantially similar services as its subsidiaries.

**IV.**

**CLASS ACTION ALLEGATIONS**

22.     A class action is alleged pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class consists of: (A) all owners of homes and buildings in the United States having Defendants' F877 and/or F2080 Fittings; and (B) all owners of homes and buildings in the United States who paid for repairs or sustained damages as a result of Defendants' F877 and/or F2080 Fittings.

23.     Plaintiffs estimate that their proposed class consists of in excess of one thousand (1,000) owners in the United States and is thus so numerous that the joinder of actions by these members would be impracticable. The putative class members have all been injured in the same way because they own homes that contain or contained the F877 and/or F2080 Fittings, which are defective in that they are manufactured from high-zinc content brass which will dezincify when exposed to water.  Questions of law and fact, the answers of which are common to the class, that arise on account of the claims asserted for this defect include, but are not limited to: 1) do high-zinc-content brass plumbing components dezincify when they are exposed to water (fact); 2) does this damage to the Fittings due to dezincification corrosion attack render the Fittings defective (law and fact); and 3) did the Defendants owe the class members the duty to provide defect-free fittings (law).

24.     The story of this single, universally defective product is the same for each of the proposed class members.  Because the proposed class members' claims arise from the same course of

events, identical issues of liability, causation, negligence, strict liability, and breach are shared by and between each of them and the claims of the Plaintiffs are typical of the claims of the putative class members and could be sought by any of them.

25.     Plaintiffs are fair and adequate representatives for this proposed class because they do not have any claims that are antagonistic to the claims of the putative class members.

26.     The claim of each individual class member is for a relatively small monetary amount, approximately $15,000 (including an estimated cost-to-repair, reasonable attorney's fees and costs), and most of the class members are natural persons who do not regularly engage in litigation. Defendants, on the other hand, are large corporations that are not strangers to litigation and, in fact, have insurance that will cover the cost of their defense of these claims.  Plaintiffs are thus informed and believe that the putative class members do not have an interest in individually controlling the prosecution of their claims for this defect.

27.     A class has been proposed in another litigation venued in the Southern District of Nevada that could potentially cover the claims of some of the putative class members.  But that litigation has not progressed to the point where any of the defendants have answered the complaint, the plaintiffs have not yet moved for class certification, and no class has been certified.

28.     It is desirable to concentrate the litigation of these claims in this forum because of the diversity of the parties and the amount in controversy.

29.     Plaintiffs do not perceive that this proposed class will be difficult to manage. And their attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class.

**V.**

**GENERAL ALLEGATIONS**

30.     Defendants sell various plumbing products including PEX plumbing systems and their components, which include high zinc content brass plumbing fittings and components.

31.     PEX is an acronym for cross-linked polyethylene. Polyethylene is a raw material and the "X" on the generic name "PEX" refers to the cross-linking of the polyethylene across its molecular

chains.

32.     For decades, plumbers and homeowners used copper piping for portable water plumbing systems. Copper is and has been accepted by virtually all plumbing codes throughout the United States.

33.     In the 1980s, plumbing system manufacturers in the United States began selling and plumbers began installing potable water plumbing systems with tubing made from polyethylene plastic. Plumbing systems using tubing made from polyethylene plastic were touted by manufacturers as being easier to install, cheaper and longer-lasting than copper plumbing systems.

34.     Polyethylene plumbing systems, however, quickly proved to be poorly conceived, designed and manufactured systems, and began to fail prematurely in the field, causing substantial property damage.  A substantial amount of litigation ensued as a result of the widespread, premature failure of polyethylene plumbing systems. Several class actions were filed and settlements in those cases exceeded $1.5 billion.

35.     At lease partially in response to the failure of polyethylene plumbing systems, virtually all manufacturers ceased manufacturing polyethylene plumbing systems for sale in the United States. In addition, most plumbing codes eventually prohibited the installation of polyethylene plumbing systems.

36.     Following the demise of polyethylene systems, Defendants and other companies began selling alternative, non-copper plumbing products in the United States.

37.     Specifically, Defendants marketed and sold plumbing systems using PEX tubing for use in residential and commercial settings.

38.     Defendants touted its PEX plumbing systems as being easier to install, cheaper and longer-lasting than copper plumbing systems.

39.     The plumbing systems that were installed and used in the class members homes and buildings is a PEX-type plastic pipe product connected using Defendants' ASTM F877 and/or F2080 high-zinc-content brass fittings.

40.     The Fittings and PEX pipes installed and used in the class members homes and buildings

8

are designed to distribute potable water.

41.     Defendants sell or sold a PEX plumbing system utilizing brass Fittings that purportedly conform to ASTM standard F877 and F2080.

42.     Defendants' Fittings are easily identified by product markings and stamps on the fittings. Defendants sold these systems under a number of different trade names, including but not limited to "ProPex," "AquaPex," and "APR" plumbing systems.

43.     Defendants were negligent in selling the Fittings for a number of reasons, including their decision to actively market, promote, and sell fittings made from brasses with high-zinc content.

44.     Brass is an alloy primarily composed of copper and zinc. High-zinc-content brass F877 and F2080 fittings and other attendant high-zinc-content brass plumbing components installed and used as part of the plumbing systems in the homes and buildings are corroding due to a well-known chemical reaction called dezincification. "High-zinc-content" means a copper alloy having a zinc content percentage of the overall weight of the Fittings on average between 32%-42% and not otherwise treated to resist dezincification. Dezincification is a form of selective leaching or removal of an element (zinc) from the brass alloy by corrosion. As a result, the high-zinc-content brass Fittings and attendant high-zinc-content brass plumbing components become porous, brittle, and/or blocked with zinc oxide and/or zinc carbonate, inevitably leading to restricted water flow and/or pressure, reduced material strength, corrosion, cracks, and/or leaks. Therefore, specification, installation and use of high-zinc-content brass Fittings and attendant high-zinc-content brass plumbing components in the class members' homes and buildings cause substantial injury/damage to the members by damaging and impairing the ability of the plumbing system to effectively operate as a potable-water-delivery system and results in the leaching of impermissible amounts of lead into the potable-water-delivery systems.

45.     Defendants knew or should have known that the high-zinc content alloy used for the Fittings it sold and marketed made the Fittings such that they have and/or will prematurely fail and

9

leach impermissible levels of lead into the potable water.

46.     Defendants knew or should have known that the Fitting design, PEX system design, and choice of brass also made the Fittings such that they have and/or will prematurely fail and leach impermissible levels of lead into the potable water.

47.     The design, materials choices, and manufacturing practices of the brass Fittings marketed and sold by Defendants have created a product that is defective and begins to fail and leach impermissible levels of lead into the potable water on its first day of use, even if perfectly installed in its intended environment.

48.     Because of their defective design and manufacture, Defendants' Fittings, including those installed at Plaintiffs' homes, failed in their intended purpose.

49.     Because of their defective design and manufacture, Defendants' Fittings are inherently defective and are substantially certain to fail within the express warranty provided with the Fittings and/or within the useful life of the Fittings.

50.     Plaintiffs and class members own, have installed, or have paid for damages causes by Defendants' defective Fittings that have already failed and are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of the product. These damages include, without limitation, dezincification corrosion, plumbing blockages, reduced and/or restricted water flow and water pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, systems failures, damage to other property, appliances and components and the leaching of impermissible amounts of lead into the potable-water-delivery systems

51.     The degradation of the Defendants' Fittings has caused damage to Plaintiffs' property other than the plumbing system sold by Defendants. For example, the dezincification process damages other components of the plumbing system not sold by Defendants like fixtures as well as appliances such as water heaters, ice makers, water treatment systems, dishwashers and clothes-washing machines

10

by depositing damaging scale and buildup on those components and the leaching of impermissible amounts of lead into the potable-water-delivery systems.

52.     Plaintiffs are informed, believe, and thereupon allege that at all times relevant herein, Defendants were the officers, agents, employees, representatives, affiliates, members, predecessors, successors-in-interest and/or alter egos of one another in doing the things alleged herein and in so doing were acting in the scope of their respective authority and agency.

53.     Defendants are "Contractors," "Subcontractors," and/or "Suppliers" as those terms are understood and defined by NRS 40.620, 40.632 and 40.634.

54.     Plaintiffs are informed, believe, and thereupon allege that the above-referenced high-zinc-content brass Fitting deficiencies and defective conditions have proximately caused damage to the Plaintiffs and the class.   The blatant manifestations of this dezincification injury include the dezincification corrosion itself, leaching lead into the potable-water-delivery system, plumbing blockages, reduced water flow and/or pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, system failures, and/or damage to other property, appliances, and components, including the quality of the potable water delivered through the system by the leaching of lead into the homeowners' water.   Plaintiffs are informed and believe that these damages are pervasive and exist in the homes and buildings.

55.     The homes and buildings may have suffered damages in other ways and to other extents not presently known to Plaintiffs, and not specified above.   Plaintiffs reserve the right to amend this Complaint upon discovery of any additional damages not referenced herein, and/or to present evidence of the same at the time of trial of this action.

56.     Plaintiffs allege and assert that their claim of defective construction and this legal action have all been brought in a timely manner and within the statute of limitations and repose periods, if applicable.

57.     Pursuant to NRS Chapter 40 and to the fullest extent of the law, Plaintiffs seek recovery for injuries and/or damages to property.   Plaintiffs' and the class members' damages exceed $5,000,000.

///

///

# VI.

## FIRST CAUSE OF ACTION

**(Breach of Implied Warranties of Fitness for Particular Purpose, Merchantability, Habitability, Quality, and Workmanship)**

58.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

59.     Plaintiffs are informed, believe, and thereupon allege that Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, sale, and warranting of defective high-zinc-content brass F877 and F2080 Fittings and potable-water-delivery systems installed and used in homes constructed throughout the United States and/or were involved in the planning, development, design, construction, warranting, repair, selection of materials, supply of materials, installation of materials, and/or sale of the homes and buildings, which contain defective high-zinc-content brass Fittings and attendant high-zinc-content brass plumbing components, and that Plaintiffs and their members were the intended beneficiaries and/or the intended third-party beneficiaries of each and every such act and/or warranty.

60.     By designing, manufacturing, marketing, supplying, selecting, installing, and/or causing the high-zinc-content brass F877 and F2080 Fittings and potable-water-delivery systems and attendant high-zinc-content brass plumbing components to be installed in the homes and buildings, Defendants expressly and/or impliedly warranted that said systems and components were free of defective materials, were of merchantable quality, were suitable and fit for the ordinary purpose for which said systems and components were intended, were safe, were proper, and that the homes and buildings were constructed in a workmanlike manner and were habitable.  Defendants also actively sought to distribute their products in this marketplace by making certain representations and warranties about their plumbing system to national, state, and/or local agencies such as building authorities where the product system was marketed and sold as approved for use in accordance with national, state, and/or local laws. As a result of these representations and warranties, national, state, and/or local agencies approved the high-zinc-content brass Fittings, plumbing systems and attendant high-zinc-content brass plumbing

components for use, conveying the defective information and warranties to Plaintiffs and their members.

61.   Defendants impliedly warranted that the high-zinc-content brass F877 and F2080 Fittings and plumbing systems were fit for the particular purpose they were intended, and that said systems and components would perform in a defect-free manner.

62.   Plaintiffs are informed, believe, and thereupon allege that Defendants breached said warranties by failing to adequately and properly develop, design, manufacture, assemble, distribute, market, sell, warrant, select materials, install, and/or cause to be installed the high-zinc-content brass F877 and F2080 Fittings and plumbing systems and attendant high-zinc-content brass plumbing components in the homes and buildings and/or by failing to provide defect-free plumbing systems and attendant plumbing components in the homes and buildings.

63.   As a direct and proximate result of the breaches of the implied warranties by Defendants, Plaintiffs and their members have been, and will continue to be caused damage as more fully described herein including, but not limited to product failures, dezincification corrosion, leaks, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the homes and buildings and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including leaching of lead from the high-zinc-content brass fittings into the potable-water-delivery systems of the homes and buildings, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

64.   As a further direct and proximate result of the breaches of the implied warranties by Defendants, Plaintiffs and their members have suffered damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes and buildings to prevent further damage and to restore the homes and buildings to their proper habitable condition. Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

65.     Plaintiffs incorporate the prayer for relief as though set forth herein.

66.     Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to NRS 40.600 et seq., NRS 116.4117, NRS 18.010, and other states' laws.

**VII.**

**SECOND CAUSE OF ACTION**

**(Breach of Express Warranties)**

67.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

68.     The Defendants did prepare, distribute, and provide express warranties as part of the Defendants potable-water-delivery systems and fittings.  These warranties provide coverage for certain defects in these plumbing systems and components.  These warranties were intended for use by customers and end-users of the plumbing systems, including Plaintiffs and their members.

69.     The Defendants expressly warranted that the high-zinc-content brass Fittings were developed, designed, manufactured, and distributed in conformance with ASTM Standards F877 and F2080 and any and all applicable safety standards, building and product codes, standards, and regulations.  In so doing, Defendants expressly warranted that their plumbing systems were fit, sound, and safe, and would remain so for a reasonable period of time.

70.     Plaintiffs are informed, believe, and thereupon allege that the express warranties made and used by Defendants have at all relevant times been written in the form of, by example, and without limitation: product catalogues, instruction manuals, ASTM Standards F877and F2080 and/or other codes or standards, specifically including NSF standards and/or codes, advertising flyers, brochures, sales literature, promotional packages, signs, magazine and newspaper articles and advertisements, all designed to promote the introduction and ultimate sale of the defective high-zinc-content brass F877 and F2080 brand plumbing systems in the United States, and to promote the belief that these systems had been properly developed, designed, manufactured, and distributed for safe and effective use in this jurisdiction.

71.     As a direct and proximate result of the breaches of the express warranties by Defendants as herein alleged, Plaintiffs and their members have been, and will continue to be, caused damage as

14

more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, blockages, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, resultant damage to the homes and buildings and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the homes and buildings' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest, and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

72.     As a further direct and proximate result of the breaches of the express warranties by Defendants as herein alleged, Plaintiffs and their members have suffered injuries and/or damages to property in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes and buildings to prevent further damage and to restore the homes and buildings to their proper condition.  Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

73.     Plaintiffs incorporate the prayer for relief as though set forth herein.

74.     Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to NRS 40.600 et seq., NRS 116.4117, NRS 18.010, and other laws.

## X.

## FIFTH CAUSE OF ACTION

### (Negligence, Including Negligent Misrepresentation, Failure to Warn/Instruct, Negligent Selection and Negligent Installation)

75.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

76.     Plaintiffs allege that Defendants knew or should have known that the high-zinc-content brass F877 and F2080 brand plumbing systems and attendant high-zinc-content brass plumbing components were not properly or adequately designed, tested, engineered, marketed, distributed,

marked, labeled, represented (including instructions and warnings), selected, or installed such that Plaintiffs and their members have been substantially damaged or injured thereby, and that Defendants knew or should have known that the homes and buildings, which contain defective high-zinc-content brass Fittings and attendant high-zinc-content brass plumbing components, are defective because they are not and were not developed, designed, manufactured, assembled, constructed, plumbed, distributed, marketed, sold, and/or warranted in accordance with applicable laws, codes, and/or standards of care.

77.    Plaintiffs allege Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable harm to Plaintiffs and their members and knew or should have foreseen with reasonable certainty that Plaintiffs and/or their members would suffer injury and/or monetary damages as set forth herein by using, specifying for use, and/or installing the F877 and F2080 Fittings and plumbing systems and attendant high-zinc-content brass plumbing components in the homes and buildings.

78.    Plaintiffs are informed, believe, and thereupon allege that Defendants breached said duty by negligently designing, developing, manufacturing, distributing, marketing, and/or selling unreasonably unsafe and defective plumbing systems and attendant parts, which were installed and used in the homes and buildings, and/or by selecting and/or installing said plumbing systems and components in the homes and buildings, or causing the same to be installed, in a manner inconsistent with manufacturer's specifications, local, state and national codes, and/or standards of performance within the industry, as well as failing to select and/or use materials that are capable of performing in a defect-free manner.

79.    Defendants' negligence includes the failure to provide adequate information to local building code authorities.  Plaintiffs, their members, and/or their predecessors-in-interest are members of the class of persons that the building codes and ordinances were designed to protect.  Such violations are negligence per se on the part of Defendants.

80.    Defendants' negligence includes misrepresentations about the defective plumbing systems and components given to Plaintiffs, their members, and/or their representatives, upon which they relied to their detriment and damage.

81.    As a direct and proximate result of the Defendants' negligence, Plaintiffs and their

members have been, and will continue to be, caused damage as more fully described herein including, but not limited to blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, dezincification corrosion, loss of use and function of the plumbing system and related improvements and/or appliances provided by others, resultant damage to the homes and buildings and work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, including the leaching of lead into the homes and buildings' potable-water-delivery systems, and economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.  These damages and others are expected to increase over time as the defective systems and components continue to fail.

82.     As a further direct and proximate result of Defendants' negligence, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes and buildings to prevent further damage and to restore the homes and buildings to their proper habitable condition.  Plaintiffs and their members have also been compelled to resort to litigation against Defendants to judicially resolve their differences.

83.     Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.

84.     The damages and/or injuries suffered by Plaintiffs and their members, are of the kind that ordinarily do not occur in the absence of negligence, negligence per se, carelessness, and/or as a result of unworkmanlike conduct.

85.     The damages and/or injuries suffered by Plaintiffs and their members were caused by an agency or instrumentality over which Defendants had the exclusive right or control, and which was not mishandled or otherwise changed after Defendants relinquished control.

86.     The damages and/or injuries suffered by Plaintiffs and/or their members were not due to any voluntary action on the part of Plaintiffs and/or their members.

87.     Defendants have superior knowledge and/or are in a better position to explain the

damages and/or injuries suffered by Plaintiffs and their members.

88.     Plaintiffs incorporate the prayer for relief as though set forth herein.

89.     Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to NRS 40.600 et seq., NRS 116.4117, NRS 18.010, and other laws.

**XI.**

**SIXTH CAUSE OF ACTION**

**(Strict Products Liability)**

90.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

91.     At all relevant times herein, Defendants, developed, designed, manufactured, supplied, distributed, marketed, sold, warranted, selected materials, and installed, or caused to be installed, defective plumbing systems and component parts in the homes and buildings, notably defective high-zinc-content brass F877 and F2080 Fittings and plumbing systems and attendant high-zinc-content brass plumbing components, that have prematurely failed due to dezincification corrosion, so as to cause the homes and buildings to be in a dangerous, defective, unsafe, and unfit condition for habitation.

92.     Defendants knew and/or should have known and expected that their products would be placed in the stream of commerce and on the market, and would reach Plaintiffs and their members without substantial change and would be installed in the same defective condition in which they were originally designed, manufactured, and sold.

93.     At all times relative hereto, Defendants owed a duty of reasonable care to the Plaintiffs and their members in the design, development, manufacture, distribution, marketing, sale, use, selection, and installation of materials in the homes and buildings.

94.     Defendants breached their duties by failing to adequately and properly design, develop, manufacture, distribute, market, warn, sell, select, and/or install the plumbing systems and component parts in the homes and buildings in that said system and component parts are defective and/or otherwise unsuitable for use, resulting in failures and damage to Plaintiffs and their members.  For example, but not limitation, the plumbing systems and components have failed (dezincified), caused damage to other

property, and caused blockages, restricted water flow and/or pressure, reduced material strength and structural integrity, weeping, leaks, cracks, product failures, stress, corrosion, cracking, loss of use and function of the plumbing systems and related improvements and/or appliances provided by others, leaching of lead into the homes and buildings' potable-water-delivery systems, and other damages. Defendants had prior notice and knowledge of these defects and potential damages, and failed to act timely and accordingly to remedy these defects.

95.     As a direct and proximate result of the foregoing, Plaintiffs and their members have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this Court in that they have been and will hereafter be required to perform works of repair, restoration, and construction to all or portions of the homes and buildings to prevent further damage and to restore the homes and buildings to their proper habitable condition.  Plaintiffs and their members will establish the amount of their damages at the time of trial according to proof.  As a further direct and proximate result of the foregoing, Plaintiffs and their members have been compelled to resort to litigation against Defendants to judicially resolve their differences.

96.     Plaintiffs' and their members' damages and/or injuries, are sufficient circumstantial evidence of proof of the existence of a defect or an unreasonably dangerous condition, and evidence of a defect or an unreasonably dangerous condition, is properly inferred under the doctrine of res ipsa loquitur.

97.     Plaintiffs incorporate the prayer for relief as though set forth herein.

98.     Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to NRS 40.600 et seq., NRS 116.4117, NRS 18.010, and other states' laws.

## XII.

### SEVENTH CAUSE OF ACTION

### (Declaratory and Equitable Relief)

99.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

100.     Plaintiff and class members seek a Court declaration of the following:

a.   The F877 and F2080 fittings have a defect that causes them to prematurely fail, resulting in water damage to property, leaching of impermissible amounts of lead into the potable-water-delivery systems and the necessity of the removal and replacement of the Fittings;

b.   The F877 and F2080 fittings have a defect in workmanship and material that causes failures;

c.   Defendants knew of the defects in their F877 and F2080 fittings;

d.   Defendants shall re-audit and reassess all prior warranty claims regarding the F877 and F2080 fittings, including claims previously denied in whole or in par; and

e.   Defendants shall establish an inspection program and protocol to be communicated to all class members that will require Defendants to pay for damage caused by their F877 and F2080 fittings and to replace those systems.

**XIII.**

**EIGHTH CAUSE OF ACTION**

**(Violation of Nevada and All Other States' Deceptive Trade Practices Act)**

101.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

102.   Defendants, have engaged in deceptive trade practices that are prohibited by Chapter 598 of the Nevada Revised Statutes and statutes of the other states:

a.   Defendants knowingly made false representations as to the characteristics, materials, standards, ingredients, uses, and benefits of the F877 and F2080 Fittings and plumbing systems, but not limited to representing that these materials and systems were defect-free and suitable for residential use in the Las Vegas Valley, Nevada;

b.   Defendants represented that the F877 and F2080 Fittings and plumbing systems were of a particular standard, quality, grade, style, or model and knew or should have known that they are of another standard, quality, grade, style, or model including, but not limited to life expectancy for these materials and systems;

c.   Defendants knowingly made other false representations in transacting the

20

1    purchase and sale of the F877 and F2080 Fittings and plumbing systems; and

2           d.      Defendants knowingly failed to disclose material facts in connection with the

3    purchase and sale of the F877 and F2080 Fittings and plumbing systems, but not limited to the fact that

4    these materials and systems would suffer from dezincification corrosion when exposed to Las Vegas

5    Valley, Nevada water.

6           103.    But for the Defendants' unfair trade practices, Plaintiffs would not have been damaged

7    because their homes would not have been plumbed with these defective systems and materials.

8           104.    Plaintiffs incorporate the prayer for relief as though set forth herein.

9           105.    Pursuant to NRS 41.600 and the applicable trade practice and consumer protection

10   statutes of other states, Plaintiffs and their members, as victims of Defendants' consumer fraud, are

11   entitled to recover the damage they have sustained as a result of that fraud and  any costs and

12   reasonable attorneys' fees they incur as a result.

13                                          **XIV.**

14                            **NINTH CAUSE OF ACTION**

15                                      **(Alter Ego)**

16          106.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this

17   Complaint as though fully set forth herein.

18          107.    Plaintiffs are informed, believe, and thereupon allege that UPONOR CORPORATION

19   is the parent or grandparent corporation of UPONOR, INC.; WIRSBO COMPANY; and UPONOR

20   WIRSBO COMPANY (North American Defendants).  The North American Defendants form, with

21   UPONOR CORPORATION at the apex, a worldwide group of interrelated companies that are

22   commonly engaged in the line of business that is designing, developing, testing, manufacturing,

23   distributing, supplying, marketing, selling, and warranting plumbing and climate-control products for

24   the construction and public utility industries.

25          108.    Plaintiffs are informed, believe, and thereupon allege that UPONOR CORPORATION

26   exercises complete control over the activities and operations of its subsidiary/child entities, UPONOR,

27   INC.; WIRSBO COMPANY; and UPONOR WIRSBO COMPANY, to the extent that these

28   subsidiary/child entities are the mere alter egos of their parent, UPONOR CORPORATION.

                                            21

109.     Plaintiffs are informed, believe, and thereupon allege that the unity of interest and ownership between the Uponor Defendants is such that the subsidiary/child entities are inseparable from their parent, UPONOR CORPORATION.

110.     To recognize these subsidiary/child entities as viable corporate entities separate and apart from UPONOR CORPORATION and thus insulate UPONOR CORPORATION from liability to Plaintiffs would, under these circumstances, sanction injustice and operate as a fraud against Plaintiffs. Plaintiffs should be entitled to pierce the corporate veil of the subsidiary/child entities behind which UPONOR CORPORATION has attempted to hide in committing its acts and omissions that have and will continue to damage Plaintiffs and their members.

111.     Plaintiffs incorporate the prayer for relief as though set forth herein.

112.     Plaintiffs are entitled to recover their attorneys' fees, costs, and expenses pursuant to NRS 40.600 et seq., NRS 116.4117, NRS 18.010, and other laws.

## XVI.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     Certification of this matter as a class action and appointing Plaintiffs and their counsel to represent the classes defined above;

2.     Compensation for all damages suffered by Plaintiff and the classes defined above;

3.     Damages suffered by Plaintiffs and  the class, including but not limited to damages for violations of the Illinois and Nevada Deceptive Trade Practices Act and similar statutes in other states;

4.     An award for reasonable attorneys' fees and costs and disbursements incurred herein;

5.     Enjoining Defendants from denying warranty claims for failed F877 and F2080 fittings;

6.     Enjoining Defendants from selling high-zinc content brass F877 and F2080 fittings;

22

7.      Declaring the rights and obligations of the parties as prayed for;

8.      For general and special damages pursuant to NRS 40.600 et seq., and all other statutory or common law causes of action, all in an amount in excess of $75,000;

9.      For consequential damages, including, but not limited to attorneys' fees and costs including all fees and expenses incurred before the filing of this Complaint;

10.     For the cost to repair and/or replace the defective plumbing systems and products;

11.     For extra-statutory damages based on the Defendants' conduct and non-compliant responses during the NRS Chapter 40 claims process;

12.     For costs and expenditures to correct, cure, or mitigate injustices and damages caused or that will be caused by the defects and/or deficiencies as set forth herein;

13.     Economic losses associated with the defects and/or deficiencies, including loss of use, relocation, and alternative housing;

14.     For an award of reasonable attorneys' fees, costs, expert costs, and expenses incurred in investigating the constructional defects in the homes and buildings and prosecuting all of these claims, including all fees and expenses incurred before the filing of this Complaint, pursuant to NRS Chapter 40, NRS Chapter 116, NRS 18.010, NRS 41.600, and other laws;

15.     For an award of pre-judgment interest on all monetary damages, fees, and costs awarded in this action;

16.     For a declaration of the interpretation, construction, and applicability of NRS Chapter 116 and NRS Chapter 40 as those statutes pertain to the facts and circumstances alleged herein;

17.     For a declaration that the instant action is properly commenced pursuant to NRS Chapter 116, NRS Chapter 40, NRS 41.600, and common law, and resolves any and all disputes

between Plaintiffs and their members and Defendants that arise out of the constructional defects,

conduct, transactions, and occurrences set forth herein;

18.   For a declaratory judgment adjudicating the relative rights and duties of the parties;

and

19.   For such further declaratory, equitable, or other relief as the Court may deem

necessary and appropriate under the circumstance.

**XVII.**

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this 7th day of February, 2012.        **GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C.**

_/s/ Mark C. Goldenberg, Esq.,_
Mark C. Goldenberg, Esq. (IL Bar 00990221)
Thomas Rosenfeld, Esq. (IL Bar 06301406 )
Kevin P. Green, Esq. (IL Bar 06299905)
2227 S. State Route 157
P.O. Box 959
Edwardsville, Illinois 62025
Tel. (618) 656-5150
**LEAD COUNSEL FOR PLAINTIFFS**

_Of Counsel_

James D. Carraway (Cal. Bar 143592 & Nev. Bar #7642)
CARRAWAY & ASSOCIATES, LLC
7674 W. Lake Mead Blvd., Suite 215
Las Vegas, Nevada 89128
Tel. (702) 632-1580

J. Randall Jones (Nev. Bar #1927)
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89109
Tel. (702) 385-6000

1

2    Robert C. Maddox (Nev. Bar #4002)
     MADDOX, ISAACSON & CISNEROS, LLP
3    3811 West Charleston Blvd. #110
     Las Vegas, Nevada 89102
4    Tel. (702) 366-1900

5    Scott K. Canepa (Nev. Bar #4556)
     CANEPA RIEDY & RUBINO
6    851 South Rampart Blvd. #160
     Las Vegas, Nevada 89145
7    Tel. (702) 304-2335

8    Francis I. Lynch (Nev. Bar #4515)
9    LYNCH, HOPPER, SALZANO & SMITH, LLP
     1640 Alta Drive, #11
10   Las Vegas, Nevada 89106
     Tel. (702) 868-1115
11

12   *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28